**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-14219-BFK |
| JAVAD SHEIKHZADEH, ) | Chapter 7 |
| ) | |
| Debtor. ) | |

**MEMORANDUM OPINION AND**
**ORDER GRANTING TRUSTEE'S**
**MOTION FOR APPROVAL OF SETTLEMENT**

On April 2, 2018, the Chapter 7 Trustee in this case, Donald F. King, filed a Motion to Approve Settlement pursuant to Bankruptcy Rule 9019. Docket No. 55. The Debtor filed an Objection to the Trustee's Motion. Docket No. 57. The Trustee filed a Reply Memorandum. Docket No. 58. The Court heard the evidence and the arguments of the parties on April 24, 2018. For the reasons stated below, the Court will overrule the Debtor's Objections and will grant the Trustee's Motion.

**Procedural History**

*A. The Debtor's Seven Bankruptcy Cases.*

The Debtor, Javed Sheikhzadeh, has been the subject of seven different bankruptcy cases in this Court. They are:

- Case No. 11-17681-BFK: Chapter 7, filed October 24, 2011. Dismissed November 9, 2011, for failure to timely file Lists, Schedules and Statements.

- Case No. 13-15432-RGM: Chapter 7, filed December 5, 2013. Dismissed December 31, 2013, for failure to timely file Lists, Schedules and Statements.

- Case No. 14-14219-BFK: *This case*, Chapter 7, filed November 12, 2014, and discussed in more detail below.

- Case No. 15-11825-BFK: Chapter 13, filed May 27, 2015. Dismissed with prejudice for 90 days on August 27, 2015. The Debtor appealed, but the appeal was dismissed for failure to comply with the briefing schedule. Appeal No. 15-01163.

- Case No. 16-10423-BFK: Chapter 13, filed February 6, 2016. Dismissed with prejudice for 180 days on May 31, 2016.

- Case No. 17-13435-KHK: Chapter 13, filed October 11, 2017. Dismissed December 22, 2017.

- Case No. 18-10490-KHK: Chapter 13, filed February 12, 2018. Dismissed with prejudice for 180 days on May 4, 2018. The Debtor has appealed. Appeal No. 18-00609.

Despite the Debtor's lack of success in Chapter 13 – four dismissals, two with prejudice – it is only this case, Case No. 14-14219-BFK, that concerns the Court at this juncture.

B. *The Debtor's Medical Malpractice Claims.*

1.  On April 10, 2014, before this case was filed, the Debtor filed an action for medical malpractice against Inova Healthcare Services, d/b/a Inova Fairfax Hospital, in the Circuit Court of Fairfax County. Civil Action No. 2014-04914; Tr. Ex. 1, at Ex. C.[1]

2.  On June 10, 2014, also before this case was filed, the Debtor filed a separate action against Infectious Diseases Physicians, Inc., in the Circuit Court of Fairfax County. Civil Action No. 2014-7832; Tr. Ex. 1, at Ex. B.

---

[1] All of the Trustee's Exhibits were admitted in this proceeding without objection. The Trustee's Exhibits are referred to in this Opinion as "Tr. Ex. _."

3.  Both cases alleged medical negligence on the parts of the providers during the period April 11, 2012, through and including June 26, 2012. Tr. Ex 1, at Ex B, ¶ 3; *Id.* at Ex. C, ¶ 3.

4.  The Debtor was represented in both cases by Harvey Volzer of the law firm of Shaughnessy & Volzer, P.C.

5.  Both cases were non-suited in October 2014, before this bankruptcy case was filed.[2]

*C. The Debtor Files This Bankruptcy Case.*

6.  On November 12, 2014, the Debtor filed a Voluntary Petition under Chapter 7 in this case. Case No. 14-14219-BFK. Docket No. 1.

7.  The Debtor was represented in this case by Amir Raminpour of the law firm of Raminpour Lee, LLP.

8.  In his "Asset Intake" form, which the Debtor signed and delivered to Mr. Raminpour's office, the Debtor stated "No" when asked whether he possessed any medical malpractice claims. Tr. Ex. 3.

9.  Despite having engaged Mr. Volzer's firm to handle the medical malpractice cases, having filed two lawsuits and having suffered non-suits within a month of the filing of his Petition in this case, the Debtor did not list the medical malpractice claims in his Schedules, nor did he file a claim of exemptions with respect to the medical malpractice claims. Docket No. 1, Schedule B, Schedule C.[3]

---

[2] Virginia law allows one dismissal without prejudice of right, known as a non-suit. Va. Code § 8.01-380(A). If the action was timely filed, then the statute of limitations is tolled for an additional six months for the case to be re-filed. Va. Code § 8.01-229(E).

[3] Virginia is an opt-out state. Va. Code § 34-3.1. The Commonwealth allows an unlimited exemption for personal injury claims. Va. Code § 34-2.1.

10.     The Chapter 7 Trustee filed a Report of No Distribution. The Debtor received a discharge and the case was closed on March 2, 2015. Docket Nos. 13, 22, 24.

   D.  *The Debtor Re-Files the Medical Malpractice Cases.*

11.     The Debtor re-filed the two medical malpractice actions on February 15, 2015, while the bankruptcy case was still pending. Civil Action 2015-1589; Civil Action 2015-41590. Tr. Ex. 2, at 5.

12.     Ultimately, the Circuit Court of Fairfax County dismissed both of the medical malpractice actions with prejudice on July 24, 2015.

   E.  *The Bankruptcy Case is Reopened.*

13.     On June 18, 2015, while the medical malpractice cases were pending, the Debtor, through Mr. Raminpour, filed a Motion to Reopen the bankruptcy case. Docket No. 25.

14.     The Court granted the Motion to Reopen on July 29, 2015 (five days after the dismissal of the medical malpractice claims with prejudice on July 24th). Docket No. 30.

15.     The Debtor filed an Amended Schedule B, in which he listed the medical malpractice claims as assets. Docket Nos. 27, 32.[4]

16.     The Chapter 7 Trustee again filed a Report of No Distribution, and the case was closed for the second time on August 11, 2015. Docket Nos. 33, 34.

   F.  *The Debtor Files a Legal Malpractice Case, and the Bankruptcy Case
        is Reopened a Second Time.*

17.     On April 21, 2017, the Debtor filed a legal malpractice action against Mr. Volzer and Mr. Raminpour and their respective law firms in the Circuit Court of Fairfax County. Civil Action No. 2017-05765.

---

[4] The Debtor did not file an Amended Schedule C to exempt the medical malpractice claims.

18. Shortly thereafter, on June 26, 2017, the U.S. Trustee filed a Motion to Reopen the case for the second time. Docket No. 35.

19. The Debtor objected to the Motion to Reopen on the grounds that the legal malpractice action was not property of the estate and, alternatively, that the legal malpractice claims were exempt. Docket No. 39.

20. The Court granted the Motion to Reopen. Docket No. 43.

21. On April 2, 2018, the Trustee filed a Motion for Approval of a Settlement with the attorneys pursuant to Bankruptcy Rule 9019. Docket No. 55.

22. The Debtor objected to the proposed settlement. Docket No. 57.

23. The Trustee filed a Reply Memorandum in support of the settlement. Docket No. 58.

24. The Court heard the evidence and the arguments of the parties on April 24, 2018.[5]

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this district on August 15, 1984. This is a core proceeding under 28 U.S.C. §§157(b)(2)(A) (matters concerning the administration of the

---

[5] At the hearing on April 24th, the Court overruled the Debtor's objection that the settlement was for an unreasonably low amount. The Court's ruling from the bench is incorporated herein. In the Court's view, requiring the Trustee to hire legal malpractice experts to prove the legal claims, as well as medical malpractice experts to prove the underlying medical claims, in a case where the Trustee has twice filed Reports of No Distribution (commonly referred to as No Asset Reports), would require legal heroics of the Trustee not normally seen in no-asset bankruptcy cases. While all compromises must be "fair and equitable," it does not mean that a bankruptcy judge must conduct an evidentiary hearing or trial before approving the settlement. Rather, there are four factors the court analyzes to determine if the settlement passes muster. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); *In re Health Diagnostic Lab., Inc.,* Case No. 15–32919, 2016 WL 6068812, at *3 (Bankr. E.D. Va. Oct. 14, 2016) (quoting *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997) (factors include the probability of success, the potential difficulties if any in collection, the complexity of the litigation, and the paramount interests of the creditors); *In re Loudoun Heights, LLC,* Case No. 13–15588–BFK, 2014 WL 2928110, at *8-9 (Bankr. E.D. Va. June 27, 2014); *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995).

estate), (B) (allowance or disallowance of exemptions from property of the estate) and (M) (orders approving the use of property).

As noted above, the Court has already overruled the Debtor's objections as to the reasonableness of the settlement. The Debtor's remaining grounds for objection are: (a) the legal malpractice claims are not property of the estate; and (b) in the alternative, the legal malpractice claims are exempt as the "proceeds" of the medical malpractice claims.[6] The Court will address both of the issues, in turn.

### I. Are the Legal Malpractice Claims Property of the Estate?

When a bankruptcy case is filed an estate is created. 11 U.S.C. § 541(a)(1). In a Chapter 7 case, the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* The Courts widely recognize that pre-petition claims for medical malpractice and legal malpractice are property of the estate. *In re Richman*, 117 F.3d 1414 (4th Cir. 1997) (table decision) (legal malpractice claim); *Labgold v. Regenhardt*, 573 B.R. 645 (E.D. Va. 2017) (legal malpractice claim); *In re Hall*, 415 B.R. 911, 921 (Bankr. M.D. Ga. 2009) (medical malpractice claim); *In re Zaidi*, 293 B.R. 861, 862-3 (Bankr. E.D. Va. 2002) (medical malpractice claim). The issue here is whether the Debtor's legal malpractice claims are pre-petition claims.

The Fourth Circuit has adopted the test set forth by the Supreme Court in *Segal v. Rochelle*, 382 U.S. 375 (1966), of whether the debtor's cause of action is "sufficiently rooted" in the debtor's pre-petition activities. *In re Andrews*, 80 F.3d 906 (4th Cir. 1996). The *Andrews* case involved a debtor's interest in a non-competition agreement that arose out of the pre-petition sale

---

[6] The Debtor has never amended his Schedule C to include either the legal malpractice claims or the medical malpractice claims as exempt. The Trustee concedes, however, that the medical malpractice claims would have been exempt.

of the debtor's business. The debtor argued that, because he was required to comply with the terms of the agreement and not to compete with the purchaser post-petition, his earnings were not property of the estate under Section 541(a)(6) of the Code. The Fourth Circuit, relying on *Segal*, held that the payments due to the debtor were sufficiently rooted in the debtor's pre-bankruptcy past and, therefore, were property of the estate. *Id.* at 910-11. *See also In re Shearin,* 224 F.3d 346, 351 (4th Cir. 2000) (debtor's interest in law firm capital account and profits property of the estate); *Field v. Transcon. Ins. Co.,* 219 B.R. 115, 119 (E.D. Va. 1998) (debtor's bad faith claims against insurance company property of the estate); *In re Townside Construction, Inc.,* 582 B.R. 407, 416 (Bankr. W.D. Va. 2018) (debtor's lender liability claims property of the estate); *In re Gnadt,* No. 11-10378-BFK, 2015 WL 2194475 (Bankr. E.D. Va. May 7, 2015) (debtor's interest in 409A compensation plan property of the estate).

The Court will examine both sets of claims against the attorneys.

A.   *The Legal Malpractice Claims Against Mr. Raminpour.*

The Debtor alleges that Mr. Raminpour knew of, and failed to include, the Debtor's medical malpractice claims in his Schedules when he filed for bankruptcy. Tr. Ex. 1, Circuit Court Compl., ¶¶ 29 ("Raminpour was aware plaintiff had engaged Volzer to pursue his claims for medical malpractice"), 39 ("Raminpour failed to include the Plaintiff's claims, or potential claims, against the aforesaid healthcare providers in his Bankruptcy Schedules"). The District Court for this district addressed similar claims in the *Labgold* case.

In *Labgold*, the attorney was accused of failing to list a pre-petition transfer of property that ultimately led to the denial of the debtor's discharge. 573 B.R. at 648. Even when the debtor sought to amend his malpractice claims against the attorney to allege purely post-petition acts, Judge Trenga held that "the alleged injury flowed directly from the pre-petition breaches and . . .

7

it is impossible to divorce the pre-petition breaches, including the filing of the petition itself, from the post-petition breaches in determining what caused the undesired outcome in Dr. Labgold's bankruptcy case." *Id.* at 651-52. Accordingly, the legal malpractice claims were determined to be property of the estate and the debtor lacked standing to bring them. *Id*. at 652.

The claims against Mr. Raminpour, like the claims at issue in *Labgold*, arose at the time that Mr. Raminpour filed the petition on behalf of the Debtor in this case. *Shipman v. Kruck*, 593 S.E.2d 319, 323 (Va. 2004) ("Upon the filing of the bankruptcy petition the Shipmans incurred a legal injury.") As in *Shipman*, the Debtor in this case lost control of his assets, including the medical malpractice claims, at the time that he filed his bankruptcy petition.

The Court finds that Debtor's legal malpractice claims against Mr. Raminpour and his firm are property of the estate.

  *B.  The Legal Malpractice Claims Against Mr. Volzer.*

A claim for legal malpractice requires proof of: (1) the existence of an attorney-client relationship that gave rise to a duty; (2) a breach of that duty by the attorney; and (3) damages proximately caused by the attorney's breach. *See Williams v. Joynes,* 278 Va. 57, 62, 677 S.E.2d 261, 264 (2009); *Rutter v. Jones, Blechman, Woltz & Kelly, P.C.,* 264 Va. 310, 313, 568 S.E.2d 693, 695 (2002); *Allied Prods. v. Duesterdick*, 217 Va. 763, 766, 232 S.E.2d 774, 776 (1977). Mr. Volzer was engaged by the Debtor in November 2012, and filed the two medical malpractice lawsuits in April and June 2014, so the first element, that an attorney-client relationship existed before the bankruptcy case was filed, is easily satisfied. Tr. Ex. 1, at Exs. A, B and C. The Debtor's legal malpractice Complaint alleges that Mr. Volzer "had not certified, before requesting service of process, that he had a written opinion from an appropriate medical expert," and that as a result, Mr. Volzer was forced to non-suit the cases (which had been set for a trial),

8

in October 2014, again before the bankruptcy case was filed. Tr. Ex. 1, at Ex. A, ¶¶ 19, 22, 24. All of this is inarguably rooted in the Debtor's pre-petition past. The question is whether the Debtor suffered an injury pre-petition that would have given rise to a claim for legal malpractice.

"Damage is an essential element of a cause of action. Without some injury or damage, *however slight*, a cause of action cannot accrue." *Shipman,* 593 S.E.2d at 323 (quoting *Keller v. Denny,* 232 Va. 512, 520, 352 S.E.2d 327, 332 (1987)) (emphasis added). Further, it is immaterial whether all the damages were sustained at the time of the negligent act. *Id*. In *Shipman,* the attorney, Kruck, represented the Shipmans in a bankruptcy case. The Shipmans' goal was to save their home, and Kruck advised them that the trust in which the property was titled was irrevocable, and therefore, the property was exempt. *Id.* at 321. It turned out that the trust was held to be revocable and the Shipmans were required to repurchase their home from the bankruptcy trustee. *Id.* The Shipmans sued Kruck for legal malpractice.

The Virginia Supreme Court held that the Shipmans suffered a legal injury when they filed the bankruptcy petition and thereby lost control of their assets. *Id*. at 323. Further, the Court held that when the Shipmans incurred "additional costs in legal fees, litigation costs and other costs associated with the bankruptcy filing and litigation," they suffered sufficient legal harm to give rise to a cause of action (and, therefore, the statute of limitations commenced to run on the filing of the bankruptcy case). *Id*.

In this case, the Debtor alleges that "Defendant Volzer breached the standard of care owed to Plaintiff by not preparing the cases for trial and misrepresenting the status of the preparation and/or their knowledge the suit requirements [sic]." Tr. Ex. 1, at Ex. A, ¶ 21. The medical malpractice cases, as noted above, were filed and non-suited before the bankruptcy case was ever filed. The Plaintiff further alleges that as a result of Volzer's negligence, "the Plaintiff

was forced to suffer dismissals of each of his cases by orders entered on or about October 10, 2014." *Id*., ¶ 23. These allegations are, in the Court's view, the same kind of allegations of harm ("however slight") that caused the statute of limitations to start running in the *Shipman* case.

The Debtor responds by arguing that, owing to the additional six months afforded to Plaintiffs in non-suited cases in Virginia, the statute of limitations on the medical malpractice cases did not expire until April 10, 2015, after the bankruptcy case was filed in November 2014, and therefore, the medical malpractice cases were "salvageable." This argument, though, does not mean that the legal malpractice claims are not rooted in the Debtor's pre-bankruptcy past. Not all pre-petition malpractice claims are barred by the statute of limitations before the debtor files for bankruptcy protection. Some are; some aren't. But, the fact that the statute of limitations has not expired by the time of the bankruptcy filing doesn't mean that the debtor did not have a claim as of the petition date. In other words, a legal malpractice claim need not be barred by the statute of limitations at the time that the debtor files a bankruptcy petition in order for the Court to conclude that the claim is rooted in the debtor's pre-bankruptcy past.

Finally, the Debtor argues that his legal malpractice claim against Mr. Volzer is saved by the continuous representation rule because Mr. Volzer continued to represent the Debtor post-petition. The continuous representation rule serves to toll the statute of limitations; it does not determine when the cause of action accrues. *See Moonlight Enterprises, LLC v. Mroz*, 797 S.E.2d 536, 538 (Va. 2017) (continuous representation is "in effect a tolling principle"); *Keller v. Denny*, 352 S.E.2d 327, 330 (Va. 1987). *See also Labgold,* 573 B.R., fn. 2 ("As *Shipman* makes clear, the continuous representation rule does not alter when the legal malpractice claim comes into existence but rather determines the date that the statute of limitation begins to run.") The continuous representation rule, therefore, is not applicable in this case.

10

As with the claim against Mr. Raminpour, the Court finds that the legal malpractice claim against Mr. Volzer is "sufficiently rooted" in the Debtor's pre-bankruptcy past to constitute property of the estate.

### II.     Are the Legal Malpractice Claims Exempt?

The Debtor's second objection to the Settlement Motion is that the legal malpractice claims are exempt because they are, in effect, the proceeds of the medical malpractice claims, which the Trustee concedes would have been exempt.[7]

Virginia Code Section 34-28.1 provides an exemption for personal injury and wrongful death actions, unlimited as to amount. The Debtor argues that the legal malpractice claims flow directly from the medical malpractice claims (he was the one, he argues, who suffered the injury) and that the legal malpractice claims therefore should be considered to be exempt.

As a general proposition, exemption statutes are liberally construed in favor of the debtor. *In re Nguyen*, 211 F.3d 105, 110 (4th Cir. 2000); *Shirkey v. Leake*, 715 F.2d 859, 862 (4th Cir. 1983).

Virginia Code § 34-28.1 provides in part:

Except for liens created under Article 7.1 (§ 8.01-66.2 et seq.) of Title 8.01, Article 5 (§ 54.1-3932 et seq.) of Title 54.1, and Chapter 19 (§ 63.2-1900 et seq.) of Title 63.2, all causes of action for personal injury or wrongful death *and the proceeds derived from court award or settlement* shall be exempt from creditor process against the injured person or statutory beneficiary as defined in Article 5 (§ 8.01-50 et seq.) of Title 8.01.

Va. Code § 34-28.1 (emphasis added).

In *In re Williams,* the debtor and his spouse purchased a mobile home and a van with the proceeds of a personal injury settlement almost immediately after they received their settlement

---

[7] The Court notes an inconsistency in the Debtor's position here. If the legal malpractice claims are the "proceeds" of the medical malpractice claims, then they inarguably would be property of the estate – the debtor received the medical treatment in April through June 2012, and the medical malpractice actions were filed in April and June 2014, before this bankruptcy case was filed in November 2014.

11

check. 337 B.R. 846 (Bankr. E.D. Va. 2005). Chief Judge Tice allowed the debtor's exemption in the property as "proceeds" under Va. Code § 34-28.1. *Id.* at 853 ("The court finds it reasonable to extend the Va.Code § 34–28.1 exemption in proceeds of a personal injury action to property the debtors irrefutably purchased with the proceeds immediately after their receipt of the proceeds.")

Similarly, Judge Black in the Western District of Virginia overruled a trustee's objections to a debtor's claim of exemptions under Va. Code § 34-28.1 where the debtor deposited the funds into a bank account and then commingled the proceeds with tax refunds. *In re Lane*, No. 17-70336, 2017 WL 3089754, *3 (Bankr. W.D. Va. 2017) ("In the present case, the funds are just as easily traceable to the personal injury settlement.")

More recently, Chief Judge St. John of this Court held that a Promissory Note represented the proceeds of an exempt worker's compensation settlement, where the debtor loaned the proceeds of the settlement to a company (Pro Tax) owned by his daughter. *In re Apfel,* 565 B.R. 349 (Bankr. E.D. Va. 2017). In *Apfel,* Chief Judge St. John held that the language of the exemption statute, providing for an exemption "even if the compensation is used for purchase of shares in a credit union, or deposited into an account with a financial institution or other organization accepting deposits and is thereby commingled with other funds," did not limit the Debtor's right to claim the Note exempt as proceeds of the settlement. *Id.* at 357. *See* Va. Code Ann. § 65.2–531(A).

Despite the liberality with which exemption statutes are to be construed, however, the Court finds that the legal malpractice claims at issue in this case are not "proceeds derived from [a] court award or settlement" under Va. Code § 34-28.1. There has been no court award or settlement in this case – other than, perhaps, the Trustee's settlement of the legal malpractice

claims at issue here, to which the Debtor objects and which derives from the settlement of legal malpractice claims not medical malpractice claims. In both the *Williams* case and the *Lane* case, there was in fact a settlement of a personal injury claim and the issue was whether the property (a mobile home in *Williams*, a commingled bank account in *Lane*) constituted the identifiable proceeds of the personal injury settlements. Similarly, in *Apfel*, the Debtor received a worker's compensation settlement, the proceeds of which he loaned to his daughter's company in exchange for the Promissory Note. In this case, there has been no settlement, nor a judgment, on a medical malpractice claim. The lawyers are paying the settlement, not the health care providers. The lawyers are receiving releases, not the health care providers.

Fundamentally, there is no exemption for legal malpractice claims in Virginia. In Virginia, a legal malpractice action is a breach of contract action. *O'Connell v. Bean*, 263 Va. 176, 181, 556 S.E.2d 741, 743 (2002); *Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976). A medical malpractice action, by contrast, is a negligence action sounding in tort. *Simpson v. Roberts*, 752 S.E.2d 801, 803-04 (Va. 2014) (quoting the preamble to the Virginia Medical Malpractice Act as addressing a problem "adversely affecting the public health, safety and welfare which necessitates the imposition of a limitation on the liability of health care providers in tort actions commonly referred to as medical malpractice cases"); *Morrison v. Bestler*, 387 S.E.2d 753, 757 (Va. 1990) ("Medical malpractice claims are tort claims.") The alleged legal malpractice in this case did not result in, nor cause, a personal injury or death. The Debtor is unable to cite a single case, whether from the Virginia Supreme Court or even from a Circuit Court in Virginia, to support the proposition that a legal malpractice case would be considered to be the proceeds of a medical malpractice action under Va. Code § 34-28.1. To

describe the legal malpractice claims in this case as the proceeds of the debtor's medical malpractice claims is to stretch the idea of proceeds beyond its ordinary meaning.

For the foregoing reasons, the Court overrules the Debtor's objections to the extent that the Debtor claims an exemption in the Trustee's legal malpractice settlement.

## CONCLUSION

It is therefore **ORDERED**:

1. The Trustee's Motion for Approval of a Settlement is granted.

2. The Clerk will mail copies of this Memorandum Opinion and Order, or will provide cm-ecf notice of the same, to the parties below.

Date: Jun 26 2018

Alexandria, Virginia

/s/ Brian F. Kenney
Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: June 26, 2018

Copies to:

Brian M. O'Connor
11490 Commerce Park Dr.
Suite 510
Reston, VA 20191
*Counsel for Debtor*

Lauren Friend McKelvey
1775 Wiehle Ave.
Suite 400
Reston, VA 20190
*Counsel for Chapter 7 Trustee*

Donald F. King
1775 Wiehle Ave.
Suite 400
Reston, VA 20190
*Chapter 7 Trustee*

Jack Frankel
115 South Union St.
Suite 210
Alexandria, VA 22314
*Counsel for US Trustee*

14